1

2

3

4

5

6

7

8                         IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CINDY LACAVA,                              Case No. 1:10-cv-00853 LJO SAB

12          Plaintiff,                          ORDER RE: THE PARTIES' PROPOSED
                                                JURY INSTRUCTIONS AND SPECIAL
13          vs.                                 VERDICT FORM

14   MERCED IRRIGATION DISTRICT,                RESPONSES DUE BY NO LATER THAN
                                                4:00 P.M. ON FEBRUARY 8, 2013
15          Defendant.

16   _____/

17          On February 4, 2013, the parties filed proposed jury instructions and special verdict forms for

18   the trial set to begin on February 12, 2013.  The Court has reviewed the parties' submissions and seeks

19   clarification on the following issues.

20   **I.     Single-Motive vs. Mixed-Motive Case**

21          The parties' proposed jury instructions regarding the elements of a Title VII retaliation claim

22   plainly reveal that they disagree on (or are completely unaware of) whether this case is proceeding as

23   a single-motive or mixed-motive case.  The Supreme Court has explained the differences between the

24   two cases as follows:

25          In [single-motive] cases, the issue is whether either illegal or legal motives, but not both,
            were the true motives behind the decision. In mixed-motive cases, however, there is no
26          one true motive behind the decision. Instead, the decision is a result of multiple factors,
            at least one of which is legitimate.

27

28   Price Waterhouse v. Hopkins, 490 U.S. 228, 260 (1989) (White, J. concurring).

                                                   1

1     Here, Plaintiff Cincy LaCava ("Ms. LaCava") suggests that this is a single-motive case. (See

2   Doc. 103 at 1-2) ("[A]t no point during this litigation has MID indicated that it took an adverse action,

3   in part, because of retaliatory conduct."). Yet, Ms. LaCava contends that the Ninth Circuit model jury

4   instruction for a mixed-motive case should be used. (See Doc. 125 at 3) ("The protected activity was

5   *a* motiving factor in the adverse employment action(s).") (emphasis added). Meanwhile, Defendant

6   Merced Irrigation District ("MID") appears to argue that the Ninth Circuit model jury instruction for

7   *both* a single-motive and mixed-motive case should be used. (See Doc. 117 at 14 & 16) (instructions

8   relating to pretext and the mixed-motive affirmative defense). This confusion—on both parties' part—

9   needs to be clarified before trial. Although the Court is the one that ultimately must decide which jury

10  instruction the evidence allows, see Costa v. Desert Palace, 299 F.3d 838, 856-57 (9th Cir. 2002), the

11  parties need to get on the same page.

12     **Accordingly, by no later than 4 p.m. tomorrow, February 8, 2013, the parties SHALL file**

13  **written notice with the Court indicating their position on whether this is a single-motive case OR**

14  **a mixed-motive case.[1]**

15  **II.    Adverse Employment Act "When Considered as a Whole"**

16     In both of their proposed verdict forms, the parties suggest that an employer's conduct should

17  be considered individually *and as a whole* in deciding whether the employer subjected the employee to

18  an adverse employment action. This would certainly be true if the case was proceeding under FEHA.

19  See Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1055 (2005) ("[A]s we concluded above, a series

20  of separate retaliatory acts collectively may constitute an 'adverse employment action' even if some or

21  all of the component acts might not be individually actionable."). But it is not; it is proceeding under

22  Title VII. The Court is aware that courts may look to Title VII in analyzing FEHA claims, see Clark v.

23  Claremont Univ. Center, 6 Cal. App. 4th 639, 662 (Ct. App. 1992), but the Court has found no federal

24  authority for the reverse, applying Yanowitz to a claim solely asserted under Title VII. Moreover, the

25  Ninth Circuit model jury instruction on adverse employment actions makes no mention of considering

26  _____

27     [1] The Court rejects any argument by Ms. LaCava that MID should not be allowed to present the "same decision"
     affirmative defense (assuming that this is a mixed-motive case) because MID has failed to plead it. MID's pleadings are
     lacking only because Ms. LaCava was allowed to amend her pleadings at a very late stage to include her Title VII claim. As

28  such, to the extent that this is an issue the Court will construe MID's proposed "same decision" jury instruction as a timely
     motion to amend its answer (assuming that this is a mixed-motive case) in the interest of fairness.

1    an employer's conduct as a whole.  Accordingly, unless the parties are able to present authority to the

2    contrary, the Court rejects this aspect of the parties' proposed verdict forms.

3    **III.      Front Pay and Back Pay**

4           Front pay and back pay are *discretionary equitable remedies* under Title VII.  As such, there is

5    no right to a jury trial on these issues; the court normally decides the availability and amount of these

6    damages.  See Lutz v. Glendale Union High School, 403 F.3d 1061, 1069 (9th Cir. 2005) (back pay is

7    an equitable remedy for the court to decide).

8           Nevertheless, the parties have included jury instructions and verdict questions regarding front

9    pay and back pay.  Therefore, it appears that they are ready to submit the issues to the jury.  However,

10   it is unclear on what legal basis they seek to do so.  Ms. LaCava alludes to an advisory jury pursuant to

11   Federal Rule of Civil Procedure 39; MID is silent on the matter.

12          Rule 39(c) provides that the court, either on motion or on its own, may: (1) try an issue with an

13   advisory jury; or (2) with the parties' and the court's consent, try an issue with a binding, non-advisory

14   jury.  Fed. R. Civ. P. 39(c).  The Court is of the opinion that an advisory jury would not be beneficial

15   in this case because it would not save the Court any time or resources.  The advisory jury would only

16   make an advisory verdict on the issues of front pay and back pay, which would leave the Court to wade

17   through post-trial motions to either affirm or deny the advisory verdict.  This would essentially be the

18   same as submitting the issues to the Court in the first instance.

19          The better course is to empanel a *non*-advisory jury pursuant to Rule 39(c)(2).  See Broadnax v.

20   City of New Haven, 415 F.3d 265, 271-72 (2d Cir. 2005) (allowing front and back pay to be determined

21   by a non-advisory jury pursuant to Rule 39(c)(2)).  This would allow the jury to decide all the issues of

22   the case at once (both liability and any damages) and would save the Court and the parties substantial

23   time and resources.

24          **Accordingly, by no later than 4 p.m. tomorrow, February 8, 2013, the parties SHALL file**

25   **written notice with the Court indicating whether they consent to having front pay (including the**

26   **threshold question of reinstatement) and back pay decided by a non-advisory jury pursuant to**

27   **Rule 39(c)(2).**

28   ///

1    **IV.    Availability of Emotional Distress Damages**

2         MID argues that emotional distress damages are not available to a plaintiff in a Title VII action.

3    MID cites and relies on <u>Williams v. U.S. General Services Admin.</u>, 905 F.2d 308, 311 (9th Cir. 1990)

4    for its position.

5         MID is incorrect and relies on outdated authority.  The Civil Rights Act of 1991 expanded the

6    remedies available in Title VII actions to allow awards of compensatory damages in cases involving

7    intentional discrimination (as opposed to a disparate impact case).  <u>See</u> 42 U.S.C. § 1981a(a)(1).  This

8    includes cases involving retaliation under Title VII.  <u>See</u>, <u>e.g.</u>, <u>Deloughery v. City of Chicago</u>, 422 F.3d

9    611 (7th Cir. 2005) (affirming district court's remitted award of emotional distress damages where the

10   plaintiff prevailed only on her Title VII retaliation claim).  Compensatory damages include emotional

11   distress, but exclude back pay and front pay.  42 U.S.C. § 1981a(b)(2) & (3).  Further, the amount of

12   compensatory damages is capped depending on the size of the employer.  For example, in a case where

13   the employer has more than 14 but fewer than 101 employees, the cap for compensatory damages is set

14   at $50,000.  <u>See</u> 42 U.S.C. § 1981a(b)(3)(A).

15   **V.    Federal Rule of Evidence 408**

16        MID argues in its trial brief that the February 17, 2010 meeting between Ms. LaCava and John

17   Sweigard should be excluded pursuant to Federal Rule of Evidence 408 because the conversations were

18   settlement negotiations.  (Doc. 120, MID's Tr. Br., at 12-13.)  First, this matter is not properly raised in

19   a trial brief.  Second, the argument lacks merit.

20        Rule 408 provides:

21        Evidence of the following is not admissible – on behalf of any party – either to prove or
          disprove the validity or amount of *a* disputed claim or to impeach by a prior inconsistent
22        statement or a contradiction:

23        (1) furnishing, promising, or offering – or accepting, promising to accept, or offering to
          accept – a valuable consideration in compromising or attempting to compromise *the*
24        claim

25        (2) conduct or a statement made during compromise negotiations about *the* claim . . .

26   Fed. R. Evid. 408(a) (emphasis added).  Assuming that the February 17, 2010 meeting actually was a

27   settlement negotiation, that fact has no effect on Ms. LaCava's present claims.  The meeting allegedly

28   concerned Ms. LaCava's *unequal pay claims*.  Therefore, under Rule 408, these conversations arguably

1  cannot be used to prove the validity or amount of Ms. LaCava's *unequal pay claims*.  But this case is

2  not about Ms. LaCava's unequal pay claims; it is about her retaliation claim.  There is nothing in Rule

3  408 that precludes Ms. LaCava from proving aspects of her retaliation claim with conversations that

4  allegedly related to her unequal pay claims.

5  IT IS SO ORDERED.

6  **Dated:**    **February 7, 2013**          **/s/  Lawrence J. O'Neill**
                                              UNITED STATES DISTRICT JUDGE